# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

|  |  |
|---|---|
| U.S. Equal Employment Opportunity Commission | Civil Action No. 1:24-cv-1721 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Inova Surgery Center, LLC | |
| Defendant. | JURY TRIAL DEMAND |

## I.    NATURE OF THE ACTION

This is an action brought under Title I and Title V of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, and the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), to correct unlawful discrimination on the basis of disability and age and to provide appropriate relief to Charging Party Michele McGhee-Rodgers ("McGhee-Rodgers" or "Charging Party"). The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Inova Surgery Center, LLC ("Inova" or "Defendant") violated the ADA and the ADEA when it denied accommodations to Charging Party after she requested an extension of her medical leave, terminated her, retaliated against her, and replaced her with two significantly younger and less-qualified coworkers.

## II.   JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.    This action is also authorized and instituted pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b), which incorporates by reference Sections 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 216(c) and 217.

3.    The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

## III.   PARTIES

4.    Plaintiff EEOC is the federal agency charged with the administration, interpretation, and enforcement of the ADA and the ADEA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of Title VII, 42 U.S.C. § 2000e-5, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and by Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

5.    Defendant is a Virginia corporation which has continuously employed more than 15 employees in each calendar year 2022 through the present.

6.    At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section

101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g), (h).

7. At all relevant times, Inova has been a "covered entity" under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

8. At all relevant times, Inova has continuously been an employer engaged in an industry affecting commerce under Sections 11(b), (g), and (h) of the ADEA, 29 U.S.C. § 626(b), (g), and (h).

9. Defendant operates outpatient ambulatory surgery centers in Northern Virginia, including Inova Northern Virginia Surgery Center ("INVSC") in Fairfax, Virginia.

10. Defendant maintains majority ownership in INVSC.

11. Defendant employed Charging Party at INVSC from August 2019 to July 14, 2024.

12. Susan Whitaker is or was Defendant's Director of Human Resources.

13. As Director of Human Resources Whitaker provides/provided human resources support for INVSC.

14. Defendant has assigned staff from other surgery centers to INVSC.

15. Defendant has transferred staff from other surgery centers to INVSC.

16. Defendant exercises control and direction of INVSC including by:

   (a) Formulating and administering INVSC's personnel policies and procedures, including those that relate to disability discrimination;

   (b) Administering INVSC's employee benefits, including those related to medical leave;

   (c) Deciding whether to grant the medical leave requests of the employees who work at INVSC;

3

  (d)  Advising INVSC on the leave requests of the employees who work there;

  (e)  Hiring and terminating the employees who work at INVSC;

  (f)  Responding to Charging Party's EEOC charge;

  (g)  Participating in the EEOC investigation of Charging Party's EEOC charge; and

  (h)  Participating in the conciliation process for Charging Party's EEOC charge.

17. Defendant is a joint and/or single employer of the employees who work at INVSC.

## IV. CONDITIONS PRECEDENT

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

19. More than thirty days prior to the institution of this lawsuit, Charging Party filed a Charge of Discrimination with the EEOC alleging violations of the ADA and ADEA.

20. On July 9, 2024, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that it had discriminated against Charging Party on the basis of her age and disability and inviting it to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

21. After issuing its Letter of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

22. The EEOC and Defendant were unable to reach agreement through the conciliation process.

23. On August 21, 2024, the EEOC issued to Defendant a Notice of Conciliation Failure advising it that the EEOC was unable to secure from it a conciliation agreement acceptable to the EEOC.

## V.  STATEMENT OF CLAIMS

24. Charging Party worked for Defendant as a radiographic technologist operating a mobile c-arm x-ray machine during surgical procedures.

25. In December of 2021, Charging Party was diagnosed with bilateral carpal tunnel syndrome.

26. Charging Party's bilateral carpal tunnel syndrome would require surgery on both of her wrists.

27. Charging Party experienced pain in her wrists for over six months prior to her diagnosis.

28. Charging Party's bilateral carpal tunnel syndrome substantially limited her ability to grip, hold, and/or write.

29. Charging Party's bilateral carpal tunnel syndrome substantially limited her neurological functioning.

30. Charging Party wore assistive devices such as copper sleeves and wrist braces to alleviate pain and allow her to conduct the essential functions of her position.

31. At all relevant times, Charging Party was able to perform the essential functions of her position with or without reasonable accommodations.

32. Charging Party had never received a negative performance evaluation.

33. At all relevant times, Charging Party performed her duties in a satisfactory manner and received a positive performance evaluation for 2021.

34. In December 2021, Charging Party informed Defendant of her diagnosis and that she would require surgery on both wrists.

35. Charging Party had surgery on her right wrist for her disability on April 18, 2022.

36. Defendant approved Family and Medical Act Leave ("FMLA") for Charging Party for the period from April 18, 2022 to May 16, 2022 to enable her to have and recover from surgery on her right wrist.

37. Charging Party underwent physical therapy three times per week after her surgery and conducted additional exercises at home to recover the ability to use her right hand.

38. Charging Party submitted additional medical documentation and her FMLA was extended.

39. On June 22, 2022, Charging Party submitted another doctor's note requesting that her medical leave continue for an additional four weeks. Defendant approved this request through July 20, 2022.

40. Charging Party exhausted her FMLA leave on July 12, 2022.

41. On July 13, 2022, Charging Party's supervisor, Megan Cathall, asked her if she would be returning to work on July 20, 2022. Charging Party informed Cathall that she required additional medical leave and would be able to give Defendant an exact return-to-work date when she saw her doctor on July 21, 2022.

42. After speaking with Charging Party, Cathall informed Susan Whitaker, Director of Human Resources, that Charging Party would be seeing her doctor on July 21, 2022, and would obtain an exact return-to-work date at that time.

43. Defendant's Leave of Absence policy states, in part, "If the employee[] does not return [to] work on the originally-scheduled return date or requests in advance an extension of the agreed upon leave with appropriate medical documentation, the employee may be deemed to have voluntarily terminated his or her employment with the Company." It also states, "… [T]he

employee's continued absence from work because the employee's leave must extend beyond the maximum time allowed . . . will also result in voluntary termination of employment."

44. On July 14, 2022, Whitaker notified Charging Party that Defendant was removing her from her position.

45. Whitaker's July 14, 2022, letter also stated that Defendant was placing Charging Party on pro re nata ("PRN") status.

46. PRN status employees work only as needed, are not guaranteed shifts, and are not eligible for benefits.

47. On July 19, 2022, Defendant replaced Charging Party, then age 52, with the following part-time employees:

    a. Brightyn Sletten, then age 24, had two years of experience as a radiologic technologist, and had been licensed for a single year in Virginia. Defendant originally hired Sletten as a PRN status employee on May 31, 2022.

    b. Caroline Shelly, then age 35, had been licensed as a radiologic technologist for two years in Virginia, and had received a Consent Order from the Virginia Board of Medicine for practicing as a radiologic technologist in Virginia without a license. Defendant originally hired Shelly as a PRN status employee and she had provided back-up support to Charging Party. Shelly was a PRN status employee when Defendant hired her as a part-time employee to replace Charging Party.

48. In contrast to Sletten and Shelly, Charging Party:

    a. had been licensed as a radiologic technologist in Virginia for five years;

  b. had never been disciplined by the Virginia Board of Medicine for practicing without a license;

  c. had worked for Defendant for three years as a full-time radiologic technologist; and

  d. had never received a negative performance evaluation.

49. On July 22, 2022, Charging Party attended her doctor's appointment, which the doctor's office had moved from July 21, 2022 to July 22, 2022.

50. On July 22, 2022, Charging Party submitted a doctor's note to Defendant requesting an additional four weeks of medical leave through August 19, 2022.

51. Charging Party heard from colleagues that her position was being given to younger employees and emailed Whitaker to say that she would accept a conversion to part time work. Whitaker told Charging Party that PRN status was her only available option.

52. On August 19, 2022, Charging Party provided a doctor's note to Defendant clearing her to return to work.

53. On August 19, 2022, Charging Party asked her supervisor why she was not scheduled for any shifts. Her supervisor informed her that it was because she had been converted to PRN and was not needed that month.

54. In September 2022, Charging Party contacted her supervisor again to ask if she would be scheduled for shifts that month and was told she would not be.

55. Charging Party was not scheduled for any shifts while she had PRN status.

56. Charging Party observed shifts on the schedule for which Defendant would normally schedule a PRN status radiologic technologist however Charging Party was not scheduled for these shifts.

57. In December 2022, Charging Party's name was removed from the list of employees on the schedule.

58. In March 2023, after Charging Party filed her Charge of Discrimination with the EEOC, her name appeared in the list of employees on the schedule again. However, Defendant has not scheduled her for any shifts.

### ADA Claims (Counts I-IV)

59. The EEOC incorporates paragraphs 24 through 58.

60. At all relevant times, Charging Party was an individual with a disability under 42 U.S.C. § 12102(1)(A).

61. At all relevant times, Defendant was aware of this disability.

### Count I: Failure to Accommodate

62. On or about July 14, 2022, Defendant engaged in unlawful employment practices in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A), against Charging Party.

63. The unlawful employment practices in Count I include, but are not limited to:

   (a) failing to engage in good faith in the interactive process despite having knowledge of Charging Party's disability and despite the availability of reasonable accommodations; and

   (b) failing to provide Charging Party with four additional weeks of unpaid leave for her to recover from surgery and return to her position.

64. The unlawful employment practices contained in Count I were done with malice or with reckless disregard to the federally protected rights of Charging Party.

65. The unlawful employment practices contained in Count I were intentional.

66. The unlawful employment practices contained in Count I caused Charging Party emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

### Count II: Denial of Employment Opportunities Based on Disability and/or the Need to Make Reasonable Accommodations

67. The EEOC incorporates paragraphs 24 through 66.

68. From on or about July 14, 2022, Defendant has engaged in unlawful employment practices against Charging Party, in violation of Section 102 102 (b)(5)(B) of Title I of the ADA, 42 U.S.C. § 12112(a) and Section of Title I of the ADA, 42 U.S.C. § 12112(b)(5)(B).

69. The unlawful employment practices in Count II include, but are not limited to:

   (a) removing Charging Party from her position because of the need to make reasonable accommodations for her disability;

   (b) converting Charging Party from full-time to PRN status because of the need to make reasonable accommodations for her disability; and/or

   (c) wrongfully terminating Charging Party because of the need to make reasonable accommodations for her disability.

70. The unlawful employment practices contained in Count II were done with malice or with reckless disregard to the federally protected rights of Charging Party.

71. The unlawful employment practices contained in Count II were intentional.

72. The unlawful employment practices contained in Count II caused Charging Party emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

### Count III: Wrongful Termination

73. The EEOC incorporates paragraphs 24 through 72.

74. From on or about July 14, 2022, Defendant has engaged in unlawful employment practices against Charging Party by terminating her because of her disability, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a).

75. The unlawful employment practices in Count III include, but are not limited to, terminating Charging Party because of her disability by removing her from her position, and/or by converting her to PRN status, and failing to schedule her for any shifts.

76. Defendant's discriminatory treatment of Charging Party was done with malice or with reckless disregard to the federally protected rights of Charging Party.

77. The unlawful employment practices contained in Count III were intentional.

78. The unlawful employment practices contained in Count III caused Charging Party emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

## Count IV: Retaliation

79. The EEOC incorporates paragraphs 24 through 78.

80. From on or about July 14, 2022, Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 12203(a) by retaliating against Charging Party by terminating her employment and/or by refusing to schedule her for PRN shifts because she in engaged in the protected activity of requesting a reasonable accommodation.

81. The employment practices contained in Count IV resulted in the loss of employment opportunities and/or termination.

82. The unlawful employment practices contained in Count IV were intentional.

83. The unlawful employment practices contained in Count IV caused Charging Party significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

84. The unlawful employment practices contained in Count IV were done with malice or with reckless disregard to the federally protected rights of Charging Party.

## ADEA Claim

### Count V: Wrongful Termination

85. The EEOC incorporates paragraphs 24 through 84.

86. At all relevant times, Charging Party was over 40 years old.

87. At all relevant times, Defendant was aware that Charging Party was over 40 years old.

88. From on or about July 14, 2022, Defendant discriminated against Charging Party by terminating her because of her age, in violation of Section 623(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1).

89. The unlawful employment practices in Count V include, but are not limited to, terminating Charging Party and replacing her with two significantly younger and less-qualified co-workers.

90. The effect of the practices complained of in this count has been to deprive Charging Party of employment opportunities because of her age.

91. The unlawful employment practices contained in Count V were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assignees, and all persons in active concert or participation with it, from engaging in disability discrimination, age discrimination, retaliation, and engaging in any other employment practices that discriminate on the basis of disability, age, or protected activity.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities, and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals covered by the ADEA, and that eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to make whole Charging Party by providing appropriate back pay, including all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the instatement, reinstatement, or front pay in lieu thereof.

E. Order Defendant to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

F. Order Defendant to make whole Charging Party by providing compensation for past and future non-pecuniary losses resulting from Defendant's unlawful employment practices, including emotional and mental anguish, pain and suffering, stress, humiliation, and frustration in amounts to be determined at trial.

G. Order Defendant to pay Charging Party punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

H. Order Defendant to pay liquidated damages to Charging Party for its willful violations described in paragraphs 85 through 91, above.

    I.    Grant such further legal or equitable relief as the Court deems necessary and proper to the public interest.

    J.    Award the EEOC its costs of this action.

## VII. JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

/s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
Maryland Bar No. 04312

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney
EEOC
Virginia Bar No. 94043
Washington Field Office
131 M Street, N.E., Suite 4NWO2F
Washington, D.C. 20507
maria.morocco@eeoc.gov
Phone: 202-419-0724

/s/ R. Sam Wallace
R. SAM WALLACE
Trial Attorney
EEOC
Philadelphia District Office
801 Market St., Suite 1000
Philadelphia, PA 19107
sam.wallace@eeoc.gov
Phone: 267.589.9762
Fax: 215.440.2848

Date: September 27, 2024